PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MERCEDES ORTIZ, Defendant and Appellant.

No. 4238.   Argued January 13, 1931.—Decided April 21, 1931.

*Buenaventura Esteves* for appellant.  *R. A. Gómez* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Mercedes Ortiz was convicted of voluntary manslaughter and says that the district judge erred in admitting the testimony of the district chief of police as to a certain confession or certain admissions made in the course of a preliminary investigation.

The gist of the argument is: That whether or not a confession was voluntary is a question for the court, not for the jury; that in the instant case there was no preliminary examination concerning the character of the confession; and that the testimony upon this point was given in the presence of the jury.

The first question and answer as to any admission or confession were as follows:

"Q.—If Mercedes Ortiz of his own accord made any statement to you, please tell the gentlemen of the jury the statements which he made.

A.—On the night of the 6th or at dawn on the 7th of January of this year, in the office of Dr. Agustín Sánchez in Isabela, Eugenio Grajales being on the operating table, Mercedes Ortiz was in the same office with a wound on one arm. There I showed him two knives which had been seized by the policemen who went to the ward of Bajura with the idea of investigating a certain bloody crime that had been committed in said ward of Bajura of Isabela; I asked him which of the two knives belonged to him."

The defense objected, and moved to strike the question and answer. The district attorney stated that, if Ortiz was speaking freely and spontaneously to the public when his narrative of what had occurred was interrupted by the chief of police, the evidence was admissible. The district judge remarked that this should appear from the testimony of the witness. The defense said that the district attorney was leading the witness by making statements that the witness had not made and suggesting to him what he should say. In reply to a question from the bench, the witness said: that Ortiz and Grajales, both of whom had been wounded,

were in the office of Dr. Sánchez and there was a crowd present; that Ortiz was telling the crowd how he and Grajales had wounded each other; that when witness mentioned the fact that Grajales' knife had been found in the possession of Ortiz, and Ortiz's knife in the possession of Grajales, Ortiz explained that Grajales' knife, with which he had been wounded, remained in the wound until he arrived at his home; and that Ortiz identified as his own the knife found in the possession of Grajales.

On cross-examination it transpired that Ortiz made his statement in the office of Dr. Sánchez on the night of the quarrel, that he had not been taken to police headquarters, that the two knives had been delivered to the chief of police in the office of Dr. Sánchez, and that there were fifteen or twenty people present at the time of the conversation between Ortiz and the chief of police.

The voluntary character of the statement attributed to Ortiz was fairly well established by the foregoing circumstances, notwithstanding the unusual manner in which they were brought to light. Whether or not the district judge erred in admitting the testimony on this point without further preliminary investigation, and in the absence of objection at the time of such admission, is not now important. The same may be said of such preliminary investigation as was made in the presence of the jury. The better practice however is to permit the jury to retire.

Appellant also says that the court erred in admitting a dying declaration attributed to Grajales.

After testifying to the dying condition of Grajales and to circumstances indicative of such condition, the district chief of police said that he told Grajales of his condition and asked him to explain what had occurred. The defense objected on the ground that no sufficient basis for the admission of the dying declaration had been established. The district judge asked some further questions as to Grajales'

condition and then announced that the statement made by Grajales would be admitted. The defense again objected on the same ground as before. In response to a request by the judge for more specific reasons, counsel explained that the prosecution must first show that the wounded man was aware of his condition and that he made his declaration in the belief that he was about to die. The district attorney answered that the witness had already testified to that effect. In this he was mistaken. The court then overruled the objection. This, of course, was error.

When the witness began his narrative of what Grajales had said, namely, that on the night in question he had attended a wake and that he and Ortiz had left together, the judge interrupted with an inquiry as to whether this was the first statement that Grajales had made. The witness answered in the affirmative, but the district attorney then asked whether Grajales, before telling his story, had said anything about his physical condition. The answer was that when witness told Grajales of his serious condition he replied that he knew it, that he knew he would never recover. This was followed by a leading question in the form of a conclusion and an affirmative answer to the effect that Grajales realized that he was about to die.

It is unfortunate that counsel for the defense in a criminal case should be required to inform the court and the district attorney in the presence of a witness for the prosecution as to what that witness must state before a dying declaration can be admitted in evidence. A foundation for the admission of that declaration was finally laid, however, and the haphazard fashion in which it was laid does not, without more, constitute a sufficient ground for reversal.

Next appellant says that the court erred in admitting the testimony of a witness whose name did not appear among those listed on the information, and in permitting the district attorney to take the stand and to explain in the presence of

the jury why the name of such witness had not been included in the list. This question as developed in the brief for appellant does not demand serious consideration.

Another contention is that the court erred in permitting a policeman to testify to statements made by the accused without first showing that these statements were voluntary. The voluntary character of these admissions was clearly established before the witness was permitted to state what the accused had said. They were made by the accused in his own home on arrival of the policeman shortly after the fight. The accused was not under arrest. The fact that he was speaking to a policeman or in response to questions asked by the policeman did not render his statements inadmissible as evidence.

Appellant also complains of certain instructions. One objection is that the judge assumed that the fact of a quarrel and the use therein of two daggers had been established by the evidence.

The judge said in part:

"The *fiscal*, in order to sustain this complaint, presented two daggers which were admitted in evidence as the instruments used by the victim and the accused in the quarrel; he also examined several witnesses and the theory of their testimony, that is, what it tended to show, is more or less as follows:—"

This was the preface to a résumé of the evidence for the prosecution. After setting forth this evidence the judge stated the theory of the defense and summed up the evidence in support thereof. Finally all questions of fact were left to the jury in unmistakable terms.

A trial judge need not characterize each fact in controversy as an alleged fact every time he mentions it in his instructions. The language criticized by appellant must be construed in connection with the context and in the light of the instructions as a whole. So construed, it can hardly be said that the judge assumed the alleged quarrel as an established fact.

The fact that the judge in his instructions to the jury used the word "daggers" while witnesses referred to the weapons in question as knives, is not a sufficient ground for reversal. Both knives were before the jury, and they were not misled by any inadvertent reference to these weapons as daggers.

The other objection goes to a question as to how far a judge may go in submitting to a jury matters connected with the admissibility and probative value of dying declarations. The law governing these matters was correctly stated. Although there is some authority to the contrary, we think the judge was right in permitting the jury to pass upon all questions of fact under proper instructions as to the law applicable to dying declarations.

"In limine the question as to whether alleged dying declarations were made under such circumstances as to render them admissible in evidence is to be determined by the court upon the preliminary proof or predicate for their introduction. But the general rule in such cases is that all that is required to let the statement go to the jury is to make out a prima facie case that the utterances were made when the declarant was in articulo mortis and was conscious of his dying condition; that the question is ultimately for the jury and they may disregard the statement if they believe it was not made when deceased was in extremis and was conscious of his condition, and it is error to remove this question from their consideration. . . ." 30 C.J. 268, sec. 507.

In any event the error, if any, was not prejudicial but in defendant's favor, and he is not in a position to complain of it.

The final contention of appellant is that the judgment and verdict are contrary to the law and the evidence. This question, as presented in the brief, does not require separate discussion.

The judgment appealed from must be affirmed.

Mr. Justice Wolf took no part in the decision of this case.